IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MAYA HAMPTON, individually and as the next of kin for Lavoris D. Hampton, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | CASE NO. 2:20-CV-385-WKW [WO] |
| JOHN HAMM, *et al.*,[1] | ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendants' motion to dismiss. (Doc. # 16.) Having considered the filings of the parties, the court finds that Plaintiff's amended complaint (Doc. # 7) fails to state a claim and that dismissal is proper under Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The motion is due to be granted.

---

[1] Jefferson Dunn and Ruth Naglich are no longer Commissioner and Associate Commissioner for Health Services of the Alabama Department of Corrections. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, their successors are automatically substituted as defendants in this case. *See also ACLU of Mississippi v. Finch*, 638 F.2d 1336, 1342 (5th Cir. March 13, 1981) (holding that individual capacity claims can be subject to automatic substitution); *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc) (adopting as binding precedent for the Eleventh Circuit all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981). The Clerk of the Court is DIRECTED to substitute John Hamm, Commissioner of the Alabama Department of Corrections, and Deborah Crook, Interim Associate Commissioner for Health Services of the Alabama Department of Corrections, as the individual Defendants in this action and to update the caption accordingly. To the extent that Plaintiff alleges an individual capacity claim that is not subject to automatic substitution, she fails to state a cognizable claim, and Dunn and Naglich are due to be terminated regardless.

# I. JURISDICTION AND VENUE

Subject matter jurisdiction over the federal law claims is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.  Subject matter jurisdiction over the state law claims is proper under 28 U.S.C. § 1367.  The parties do not contest personal jurisdiction or venue.

# II. STANDARD OF REVIEW

## A.  <u>Rule 12(b)(6)</u>

When evaluating a motion to dismiss pursuant to Rule 12(b)(6), the court "accept[s] as true the facts alleged in the complaint, drawing all reasonable inferences in the plaintiff's favor." *Est. of Cummings v. Davenport*, 906 F.3d 934, 937 (11th Cir. 2018) (alteration adopted).  To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  (citation omitted).  The well-pleaded factual allegations in the complaint, but not its legal conclusions, are presumed true. *Id.*

A.   **Rule 12(b)(1)**

A motion to dismiss under Rule 12(b)(1) challenges the court's subject-matter jurisdiction.  *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).  On a Rule 12(b)(1) facial attack, the court evaluates whether the complaint "sufficiently allege[s] a basis of subject-matter jurisdiction," employing standards similar to those governing Rule 12(b)(6) review.  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1335 (11th Cir. 2013).

### III.  BACKGROUND

On June 5, 2018, at 5:25 p.m., Decedent Lavoris D. Hampton arrived at Troy Regional Medical Center in Troy, Alabama, from the Easterling Correctional Facility.  Decedent complained of shortness of breath.  He had a cough and a fever, and his oxygen saturation was measured at 90%.  (Doc. # 7 at 5–6.)  Decedent was admitted to the hospital and, at 10:18 p.m., transferred out of the Emergency Department.

Although Decedent told the doctors that he had been ill for a week and denied any use of illicit drugs, Decedent tested positive for multiple drugs, including amphetamine, methamphetamine, THC, and tricyclic drugs.  The next morning, a chest x-ray was administered, and the treating doctor concluded that Decedent had pneumonia, complicated by Adult Respiratory Distress Syndrome ("ARDS").  (Doc.

# 7 at 10.)  Decedent's oxygen saturation was measured at 82% and then 83% on June 6, 2018.

The treating doctor contacted a pulmonary specialist at Jackson Hospital in Montgomery, Alabama, and began making arrangements to transfer Decedent to Montgomery.  The treating doctor noted in his discharge summary that he was concerned that the illegal drugs had compromised Decedent's immune system.  The treating doctor noted that Decedent's white blood cell count had not risen to meet the infection as much as expected.  (Doc. # 7 at 11.)

At 1:05 p.m. on June 6, 2018, Decedent signed the transfer form for his emergency transfer to Montgomery.  At 1:30 p.m., the nurse signed the form.  An endotracheal tube was placed in Decedent's airway to ready him for transport, and he was moved from his bed into a stretcher.  (Doc. # 7 at 12–13.)

Plaintiff alleges that the process then stalled because of an Alabama Department of Corrections' policy that required a correctional officer to accompany all prisoner transfers.  The treating doctor had recommended air transport, but the officers present were too heavy for the helicopter.  Also, moving the Decedent by ambulance was delayed because the transport could not occur until a police escort vehicle arrived.  (Doc. # 7 at 12–14.)

Meanwhile, the movement of Decedent from his bed to a stretcher had dislodged the breathing tube in his airway.  (Doc. # 7 at 13.)  His previously stable

condition rapidly deteriorated, and the treating doctor returned to find that Decedent had died.  After undertaking the standard measures to attempt to revive Decedent, the treating doctor noted the time of death as 2:38 p.m.  (Doc. # 7 at 14.)

Plaintiff Maya Hampton brought this action on behalf of her father against the Alabama Department of Corrections, its Commissioner, and its Associate Commissioner for Health Services.  (Doc. # 1.)  Plaintiff has filed an amended complaint, (Doc. # 7), and Defendants have moved to dismiss the amended complaint (Doc. # 16).

The amended complaint brings four claims against Defendants.  The first, styled as a "Failure to Protect" claim, alleges that Defendants, through inaction, "failed to prevent the flow of illegal drugs into the Alabama Prison System."  (Doc. # 7 at 16.)  The second, styled as a "Claim for Deprivation of Right of Due Process," states that Defendants' "actions . . . and inactions caused [Decedent] to be deprived of his life without due process of the law . . . ."  (Doc. # 7 at 17.)  The third, styled as an "Inadequate Medical Care" claim, alleges that "the policies in place did not allow for [Decedent's] swift transfer" and that the lack of emergency transfer provision is unconstitutional.  (Doc. # 7 at 18.)  The fourth is a "Claim Under Alabama Law for Inadequate Medical Care."  (Doc. # 7 at 19–20.)  Plaintiff seeks compensatory damages, punitive damages, and attorney's fees and costs.  (Doc. # 7 at 21.)

## IV. DISCUSSION

Defendants have moved to dismiss Plaintiff's claims on various grounds. Defendants argue that all claims against the Alabama Department of Corrections and the individual Defendants in their official capacities ought to be dismissed due to Eleventh Amendment immunity or state sovereign immunity. (Doc. # 17 at 12–13.) Defendants argue that the federal claims against the individual Defendants in their personal capacities are due to be dismissed under qualified immunity and that the state claims are due to be dismissed under state agent immunity. (Doc. # 17 at 8–15.) Defendants note that Plaintiff's due process claim is improperly pleaded and, in support of their qualified immunity defense against the deliberate indifference claims, argue that: (1) the alleged policy of letting drugs into the prisons is implausibly pleaded as it is false, (2) the policy of requiring correctional officers to accompany prisoner transports does not amount to deliberate indifference, (3) the allegations of causation are insufficient, and (4) no law clearly establishes the unconstitutionality of Defendants' actions. (Doc. # 17 at 2–12.)

Plaintiff's response to the motion to dismiss fails to provide any opposition to most of Defendants' motion. Plaintiff does not argue that her state law claim should survive the state law immunities; she does not argue that the official capacity claims and claims against the ADOC should survive Eleventh Amendment immunity. Plaintiff provides one sentence in support of her drug trade claim, (Doc. # 26 at 11

6

("There is no doubt that Defendants are aware of the internal corruption in the ADOC and the presence of a flourishing internal drug trade.")), and she spends the vast majority of her response arguing that the failure to implement a policy conducive to the speedy transfer of ill prisoners constituted deliberate indifference. (Doc. # 26.)  Specifically, Plaintiff argues that "the ADOC Defendants knew or should have known that with the huge number of inmates in their custody with a medical system that barely functions and is under multi-year federal litigation that an inmate, even a convicted murderer, would need expeditious medical transport to save his or her life."  (Doc. # 26 at 5.)

Plaintiff makes no effort to show how this alleged constitutional violation was clearly apparent to Defendants.  Plaintiff does not cite any case from the United States Court of Appeals for the Eleventh Circuit or the United States Supreme Court to support her claims.  In fact, other than in a block quotation from an Alabama Department of Corrections regulation, Plaintiff's response fails to cite any case or source of law whatsoever.

## A.    Unopposed Portions of the Motion

Many circuits have adopted a rule permitting a failure to respond to be interpreted as a concession under various circumstances. *See Fox v. Am. Airlines*, Inc., 389 F.3d 1291, 1294–95 (D.C. Cir. 2004); *Pomerleau v. W. Springfield Pub. Sch.*, 362 F.3d 143, 145 (1st Cir. 2004); *Stackhouse v. Mazurkiewicz*, 951 F.2d 29,

30 (3d Cir. 1991).  That is not the rule in the Eleventh Circuit.  *See Boazman v. Econ. Lab'y, Inc.*, 537 F.2d 210, 213 (5th Cir. 1976)[2] (dismissal for failure to respond is a sanction, not a ruling on the sufficiency of the complaint and ought to be adjudicated under sanction standards).  *Boazman* has been reaffirmed in this circuit on multiple occasions.  *See, e.g.*, *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018); *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1338 (11th Cir. 2005).

Nevertheless, "the onus is upon the parties to formulate arguments," *Lyes v. City of Riviera Beach, Fla.*, 126 F.3d 1380, 1388 (11th Cir. 1997), and "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it . . . ."  *Resol. Tr. Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995).  After a review of the amended complaint and the motion to dismiss, the court finds that the unchallenged portions of the motion to dismiss are meritorious.  The Alabama Department of Corrections and the individual Defendants in their official capacities cannot be liable due to Eleventh Amendment immunity and state sovereign immunity; the individual Defendants cannot be liable for the state claims in their individual capacities due to state agent immunity; and the Fourteenth Amendment claims are inappropriate to challenge post-conviction conditions of confinement, *see Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985).

---

[2] *See Bonner*, 661 F.2d at 1207.

The only remaining question is whether the individual Defendants can be held liable in their individual capacities under the Eighth Amendment—specifically, whether Count I adequately states a "Failure to Protect" claim and whether Count III adequately states a claim for deliberate indifference to a serious medical need.

## B.   Failure to Protect Against Illegal Drugs

The amended complaint contains only threadbare allegations regarding the failure-to-protect claim.  It alleges that four illegal drugs were present in Decedent's system at the time of his hospitalization and states that "[the Commissioner's] failure and inaction regarding the prevention of illicit drugs entering the institutional [*sic*] under his authority was in addition deliberate indifference to a serious medical need," (Doc. # 7 at 3), and that "[the Associate Commissioner for Health Services'] failure and inaction regarding the prevention of illicit drugs entering the institutional [*sic*] under her authority was in addition deliberate indifference to a serious medical need."  (Doc. # 7 at 4.)  Lastly, the amended complaint states that "Defendants by inaction and with knowledge failed to prevent the flow of illegal drugs into the Alabama Prison System thus exposing Lavoris D. Hampton to excessive danger." (Doc. # 7 at 16.)  Plaintiff's opposition to the motion to dismiss says only that: "There is no doubt that Defendants are aware of the internal corruption in the ADOC and the presence of a flourishing internal drug trade.  This is evidenced by their website."  (Doc. # 26 at 11.)

Plaintiff's failure-to-protect claim fails for three reasons:  First, it fails to allege sufficient non-conclusory facts to create a plausible claim to relief, *see Iqbal*, 556 U.S. at 678 ("[F]acial plausibility" requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (quoting *Twombly*, 550 U.S. at 570)); second, even if Plaintiff's conclusory allegations were accepted as true, it is not clear that Plaintiff's allegations would amount to a constitutional violation; third, even if Plaintiff's allegations amount to a constitutional violation, that violation was not clearly established at the time of Decedent's death.

### 1.    The Qualified Immunity Standard

The question here is whether Defendants are entitled to qualified immunity. "Although 'the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be raised and considered on a motion to dismiss.'" *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002)) (alteration adopted). "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'" *Id.* (quoting *St. George*, 285 F.3d at 1337).

"Government officials acting in their discretionary duties are entitled to qualified immunity from individual capacity suits.  Qualified immunity protects

them from suit unless they violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Charles v. Johnson*, 18 F.4th 686, 698 (11th Cir. 2021) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)) (citation omitted).  Once the defendant establishes that he was acting within his discretionary authority, the inquiry turns to (1) whether facts alleged in the complaint amount to a constitutional violation and (2) whether allegations amount to a violation of a *clearly established* constitutional right.

The Eleventh Circuit recently explained the standard for determining whether a right is clearly established:

> Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable officer would understand that what he is doing is unlawful.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent. The essential question here is whether the officer had fair warning that his actions were unconstitutional.
>
> This analysis is primarily conducted by looking at the binding case law of the Supreme Court and [the Eleventh Circuit].

*Charles*, 18 F.4th at 698 (cleaned up); *see also Reichle v. Howards*, 566 U.S. 658, 664 (2012) ("[E]xisting precedent must have placed the statutory or constitutional question beyond debate." (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, (2011))); *Stephens v. DeGiovanni*, 852 F.3d 1298, 1315–16 (11th Cir. 2017) (holding that "relevant case law" is the default way to determine qualified immunity, but qualified

immunity can still be defeated under the "narrow exception" where the actions were obviously unconstitutional).

### 2.     *The Eighth Amendment Standard*

A failure-to-protect claim is analyzed under the Eighth Amendment, which prohibits the infliction of "cruel and unusual punishments."  U.S. Const. amend. VIII.  The Constitution does not "dictate the general conditions that should exist in jails and prisons," *Hamm*, 774 F.2d at 1571, but there are certain occasions where a condition of confinement will rise to the level of a constitutional violation.  First, the condition must be "sufficiently serious," such that a failure to remedy the situation "result[s] in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*  The seriousness of the risk has been called the "objective component" of the deliberate indifference standard. *Swain v. Junior*, 961 F.3d 1276, 1285 (11th Cir. 2020).

The second requirement, called the "subjective component," comes from the language of the Eighth Amendment.  Since the Eighth Amendment speaks of "punishments" and not "conditions of confinement," the "prison official must have a sufficiently culpable state of mind."  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).  "[O]nly the unnecessary and wanton infliction of

pain implicates the Eighth Amendment." *Id.* (quoting *Wilson*, 501 U.S. at 297). For prison conditions cases, the prison official must display "deliberate indifference" to satisfy this standard. *Id.*

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id.* at 837–38. If a prison official has this awareness of a risk of harm to an inmate, he violates the Eighth Amendment "by failing to take reasonable measures to abate" the risk. *Id.* at 847.

The Eleventh Circuit divides this subjective component into three elements: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *Swain*, 961 F.3d at 1285 (quoting *Lane v. Philbin*, 835 F.3d 1302, 1308 (11th Cir. 2016)).

If both the objective and subjective components are met, then the final question asks whether there was causation between the indifference and the injury. *Melton v. Abston*, 841 F.3d 1207, 1220 (11th Cir. 2016).

3.      *Discussion*

Plaintiff's amended complaint fails on the subjective component.  To begin, ingesting illegal drugs is a self-inflicted harm, and the law of the Eleventh Circuit on self-inflicted harm is not clear.  Specifically, it is unclear whether prison officials can be deliberately indifferent to *structural* risks of self-harm, or if the duty to tackle a risk of self-harm only applies when the prison official knows of a *particular prisoner's* risk of self-harm.

In *Hare v. City of Corinth*, 74 F.3d 633, 643 (5th Cir. 1996) (en banc), the Fifth Circuit laid out a distinction in the more-complicated world of pretrial detainees that is helpful here.  The en banc Fifth Circuit held that

> Constitutional attacks on general conditions, practices, rules, or restrictions of pretrial confinement are referred to as "jail condition cases." . . . In true jail condition cases, an avowed or presumed intent by the State or its jail officials exists in the form of the challenged condition, practice, rule, or restriction.  A State's imposition of a rule or restriction . . . manifests an avowed intent to subject a . . . detainee to that rule or restriction.  Likewise, even where a State may not want to subject a detainee to inhumane conditions of confinement or abusive jail practices, its intent to do so is nevertheless presumed when it incarcerates the detainee in the face of such known conditions and practices.  Thus, a true jail condition case starts with the assumption that the State intended to cause the . . . detainee's alleged constitutional deprivation. . . .
>
> When, by contrast, a . . . detainee's claim of failure to provide medical care or protection from violence does not challenge a condition, practice, rule, or restriction, but rather attacks the episodic acts or omissions of a state jail official, the question is whether that official breached his constitutional duty to tend to the basic human needs of persons in his charge.  With episodic acts or omissions,

intentionality is no longer a given . . . . Asking about the rationality of the relationship between an official's episodic acts or omissions and a legitimate governmental objective begs the underlying question whether that official had the requisite mental state to establish his liability as a perpetrator of the particular act or omission, not as a dispenser of intended conditions or restrictions.

74 F.3d at 644–45. The en banc Fifth Circuit went on to hold that deliberate indifference was the "requisite mental state" and that deliberate indifference for acts or omissions claims required a showing that the prison official had "actual knowledge of the substantial risk of [self-harm]." *Id.* at 648, 650.

This distinction—between jail conditions cases requiring no proof of subjective knowledge and acts or omissions cases requiring proof of actual knowledge of a particularized risk—is not a framework that can be directly applied to this case. First, *Hare* was decided by the Fifth Circuit in 1996 and is not binding precedent in this circuit.[3] Second, *Hare* decided only issues regarding pre-trial detainees, who are offered different protections under the Constitution.[4] Third, the Eleventh Circuit's precedent, for the reasons stated below, does not permit claims

---

[3] *See Bonner*, 661 F.2d at 1207.

[4] *Hare* did hold that medical care and failure-to-protect claims ought to be decided the same way whether the detainee was convicted or not. 74 F.3d at 650. The Eleventh Circuit similarly uses a uniform standard. *See Dang ex rel. Dang v. Sheriff, Seminole Cnty.*, 871 F.3d 1272, 1279 (11th Cir. 2017). Nevertheless, *Hare*'s distinction is generally only discussed in the context of pre-trial detention. *See Burton v. Kindle*, 401 F. App'x 635, 638 (3d Cir. 2010) (following *Hare*); *Lopez v. LeMaster*, 172 F.3d 756, 760 (10th Cir. 1999) (same); *Tesch v. Cnty. of Green Lake*, 157 F.3d 465, 475 (7th Cir. 1998) (same). *But cf. Patten v. Nichols*, 274 F.3d 829, 842 n.6 (4th Cir. 2001) (declining to adopt *Hare*'s distinction).

15

under both sides of *Hare*'s framework.  Nonetheless, *Hare*'s distinction is helpful to understand exactly the kind of claims that have been rejected by the Eleventh Circuit.

Under Eleventh Circuit precedent:  "Absent knowledge of a detainee's suicidal tendencies, the cases have consistently held that failure to prevent suicide has never been held to constitute deliberate indifference."  *Popham v. City of Talladega*, 908 F.2d 1561, 1564 (11th Cir. 1990).[5]  "Deliberate indifference, in the jail suicide context, is not a question of the defendant's indifference to suicidal inmates or suicide indicators generally, but rather it 'is a question of whether a defendant was deliberately indifferent to an *individual's* mental condition and the likely consequences of that condition.'"  *Cook ex rel. Tessier v. Sheriff of Monroe Cnty.*, 402 F.3d 1092, 1117 (11th Cir. 2005) (quoting *Tittle v. Jefferson Cnty. Comm'n*, 10 F.3d 1535, 1539 (11th Cir. 1994)) (emphasis found in both).  Thus, the Eleventh Circuit has not recognized the first species of deliberate indifference discussed in *Hare*—liability based on structural deficiencies.  The focus solely lies on the specific information known about the detainee's tendency toward self-harm.

Other circuits have given similarly narrow interpretations to the deliberate indifference test in the self-harm context.  In *Ellis v. Washington County*, 198 F.3d

---

[5] Outside the self-harm context, the Eleventh Circuit appears to support structural claims. *See Harrison v. Culliver*, 746 F.3d 1288, 1301 (11th Cir. 2014) (holding that a prison official can be liable for the flow of weapons into a prison if the official has "actual notice of a flagrant, persistent pattern of violations").

225 (6th Cir. 1999), the Sixth Circuit held that a policy regarding suicidal inmates cannot be deliberately indifferent by failing to protect against unknown suicidal tendencies. *Id.* at 227. The Sixth Circuit has maintained this narrow view of deliberate indifference in later cases. *See Comstock v. McCrary*, 273 F.3d 693, 712 (6th Cir. 2001) (plaintiff must "demonstrat[e] that [the defendant] subjectively perceived a substantial risk that [the inmate] would harm himself"). In *Watkins v. City of Battle Creek*, 273 F.3d 682 (6th Cir. 2001), the inmate voluntarily ingested drugs and died of an overdose. The Sixth Circuit held that prison officials were not liable because they did not know that the prisoner was in need of medical treatment, *id.* at 686, and that supervisory officials were not liable under a failure to train theory because the individual Defendants did not violate the Constitution, *id.* at 687. In *Leftwich ex rel. Leftwich v. County of Dakota*, 9 F.4th 966 (8th Cir. 2021), the Eighth Circuit held that liability could not attach unless the defendants had "actual knowledge of a risk of suicide based on information they obtained [regarding the inmate] and their observation of [the inmate]." *Id.* at 974. The Eighth Circuit rejected a structural argument, saying that the prison officials had "no obligation to investigate" the suicidal tendencies. *Id.*

In other circuits, structural complaints have survived. In *Sanchez v. Young County*, 956 F.3d 785 (5th Cir. 2020), the Fifth Circuit held that prisons must conduct a medical screening and suicide intake assessment. *Id.* at 795–96. Although

17

the prison officials might not know anything about the prisoner's risk of suicide, the Fifth Circuit nonetheless held that it is deliberate indifference to not investigate. In *Lemire v. California Department of Corrections & Rehabilitation*, 726 F.3d 1062 (9th Cir. 2013), the Ninth Circuit held that withdrawing all guards from a prison building created an unreasonable risk of suicide. *Id.* at 1078–79. Again, this claim was structural because it did not depend on an individualized assessment of the suicide risk.

In overdose cases, the Eleventh Circuit has held that even evidence of inebriation will not trigger a prison official's duty to assist the prisoner: "The Constitution does not require an arresting police officer or jail official to seek medical attention for every arrestee or inmate who appears to be affected by drugs or alcohol." *Burnette v. Taylor*, 533 F.3d 1325, 1333 (11th Cir. 2008). Instead, the court has looked to what each officer knew at the time and whether each officer "deliberately ignored a serious medical condition that was obvious or known to him." *Id.* at 1330–33; *see Jackson v. West*, 787 F.3d 1345, 1354 (11th Cir. 2015); *accord Collins v. Seeman*, 462 F.3d 757, 761 (7th Cir. 2006).

In the district courts of this circuit, there has been some confusion over whether a policy or custom can give rise to liability in the self-harm context. This court has said that "a supervisor's repeated failure to respond to structural complaints, which in turn resulted in the risk of suicide to a group of inmates, can

18

rise to the level of deliberate indifference." *Head v. Dunn*, No. 2:20-CV-132-WKW, 2021 WL 2003554, at *8 (M.D. Ala. May 19, 2021) (Watkins, J.).[6]  In another case, this court has held that the structural failure to screen for mental health problems at intake and to periodically screen for new mental health problems later was a violation of the Eighth Amendment.  *See Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1201–04, 1249 (M.D. Ala. 2017) (Thompson, J.).[7]  However, the Northern District of Georgia, in a case strikingly similar to this one, held that "it is not enough to generically allege an influx of drugs into the jail[;] Plaintiff's Complaint must also demonstrate that each individual County Defendant subjectively knew of the risk of [the inmate's] ingesting the illegal drug from the influx."  *James v. Bartow Cnty.*,

---

[6] The four deceased inmates in *Head* had all previously demonstrated suicidal tendencies and were known to have suicidal tendencies by prison officials.  *See* 2021 WL 2003554, at *2. The case that *Head* relied upon to support the above quote was *Greason v. Kemp*, 891 F.2d 829 (11th Cir. 1990), which is distinguishable on similar grounds.  In *Greason*, the decedent was known to have suicidal tendencies.  *See id.* at 831–32.  The particular section of *Greason* cited in *Head* held that deliberate indifference could result from a failure to provide "an institutionalized mental health unit for inmates with severe emotional problems at the [prison]."  *Id.* at 837.  The suicidal tendencies of the inmates were known in both cases, but the prison officials failed to properly treat them.  Thus, the claims in those two cases were not purely "structural" in the *Hare* sense.  At least some prison officials owed a constitutional duty to treat the known suicidal tendencies, and the supervisory officials could therefore plausibly find liability under a failure to train theory.  The present case *is* a pure structural complaint because there are no allegations that *any* prison official had the requisite level of knowledge to be deliberately indifferent to Hampton's risk of self-harm.

[7] Many suicide cases such as *Braggs* may be distinguishable from this case because they involve issues of mental health.  The duty to treat mental health conditions may find an independent basis in the duty to provide medical treatment rather than the duty to protect the inmate, thus evading the Eleventh Circuit's prohibition on structural failure-to-protect claims in self-harm cases.  *But see Hare*, 74 F.3d at 643 ("[W]e conclude that both medical care and failure-to-protect cases should be treated the same for purposes of measuring constitutional liability.").

No. 1:16-CV-01381-WSD, 2017 WL 748738, at *7 (N.D. Ga. Feb. 27, 2017), *aff'd*, 798 F. App'x 581 (11th Cir. 2020).[8]

Without the availability of a structural claim, Plaintiff's allegations fail to state a claim. The amended complaint does not allege that any prison official knew that Decedent was likely to harm himself by ingesting illegal drugs.[9] The only allegations are that Defendants' policies "failed to prevent the flow of illegal drugs into the Alabama Prison System." This claim is a structural claim as defined by *Hare*, and thus fails under current Eleventh Circuit self-harm precedent.

Even if the Eleventh Circuit overruled *Popham* and *Cook* today and recognized self-harm claims based on structural issues, Plaintiff's amended

---

[8] The failure-to-protect claim was abandoned on appeal. The Eleventh Circuit did not address its substance.

[9] If the agents beneath the individual Defendants have no constitutional duty to treat unknown risks of self-harm, it naturally follows that Defendants themselves have no constitutional duty to direct their agents to treat those risks—although even this proposition seems to be subject to a circuit split. *Compare Temkin v. Frederick Cnty. Comm'rs*, 945 F.2d 716, 724 (4th Cir. 1991) ("A claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised."); *with Fagan v. City of Vineland*, 22 F.3d 1283, 1293 (3d Cir. 1994) ("[A] municipality's liability under section 1983 for a substantive due process violation does not depend upon an individual officer's liability.").

Even if Plaintiff alleged that *some* correctional officers knew of Decedent's risk of overdose, it would still be insufficient to state a *failure to protect* claim against the individual Defendants. Under current Eleventh Circuit precedent, such a claim faces the near-impossible task of proving that the *supervisor him- or herself* was aware of the individual prisoner's risk of self-harm. *Cook*, 402 F.3d at 1117 ("[E]ven if [Plaintiff] had established the Sheriff's deliberate indifference toward suicidal inmates in general . . . this would not suffice to demonstrate the foreseeability of [*Decedent*]*'s* suicide and to hold the Sheriff liable under § 1983." (emphasis in original)). In this scenario, at least some correctional officers would owe a constitutional duty to Decedent and a *failure to train* claim might be appropriate against the individual Defendants. However, that is not the scenario presented here.

complaint would still fail to state a claim.  First, a later change or clarification of the law cannot serve to clearly establish Decedent's rights at the time of his death. Defendants would therefore be entitled to qualified immunity anyway.[10]  Second, Plaintiff's claim fails to allege that Defendants had actual knowledge of "the flow of illegal drugs into the Alabama Prison System."  Granted, Plaintiff does provide this allegation in her opposition to the motion to dismiss.  (Doc. # 26 at 11 ("There is no doubt that Defendants are aware of the internal corruption in the ADOC and the presence of a flourishing internal drug trade.  This is evidenced by their website.")[11].) However, that allegation is too conclusory and, critically, cannot be found in the amended complaint itself.

Because Plaintiff fails to sufficiently state a claim for the subjective component of deliberate indifference, the failure-to-protect claim must be dismissed.[12]

---

[10] Plaintiff's failure to cite any cases or sources of law in her brief is an independent reason for granting qualified immunity, as it is Plaintiff's burden to show, by citation to relevant law, that the unlawfulness of Defendants' conduct was clearly established at the time of the alleged violation.  *See Charles*, 18 F.4th at 698.  The meager page and a half of argument provided by Plaintiff is insufficient to meet this burden.  (Doc. # 26 at 11–12.)

[11] Plaintiff does not elaborate further regarding which language on which website purportedly demonstrates the individual Defendants' actual, *personal* knowledge of a rampant drug trade in their prisons.

[12] It is not clear either that a substantial prison drug trade, standing alone, is a sufficiently serious condition needed to meet the objective component.  In the absence of any allegation of addiction or dependence on drugs or an allegation that other prisoners utilize forced dosage as a weapon, it would be a stretch to say that a prisoner's ability to voluntarily take drugs is a "punishment[]," U.S. Const. amend. VIII, or that it constitutes "the denial of the minimal civilized measure of life's necessities."  *Farmer*, 511 U.S. at 834.

**C.**   **Deliberate Indifference in the Medical Delay**

Count III alleges that "the policies in place did not allow for [Decedent's] swift transfer with full knowledge and understanding that his life could end without it.  Any time there is no contingency for a transfer to save a person's life[,] there is a violation of the 8th and 14th Amendments."  (Doc. # 7 at 18.)

*1.   The Eighth Amendment Standard*

The standards discussed above regarding qualified immunity and Eighth Amendment claims apply here as well.   The Eighth Amendment prohibits "deliberate indifference to serious medical needs of prisoners."  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  However, the Eighth Amendment does not require medical treatment to be "perfect, the best obtainable, or even very good."  *Hoffer v. Sec'y, Fla. Dep't of Corrs.*, 973 F.3d 1263, 1271 (11th Cir. 2020) (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)).  "Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'"  *Harris*, 941 F.2d at 1505 (quoting *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986)).

"When evaluating medical care and deliberate indifference, security considerations inherent in the functioning of a penological institution must be given significant weight."  *Keohane v. Sec'y, Fla. Dep't of Corrs.*, 952 F.3d 1257, 1275 (11th Cir. 2020) (quoting *Kosilek v. Spencer*, 774 F.3d 63, 83 (1st Cir. 2014)).  The

Eleventh Circuit has repeatedly recognized that some conditions are inherent in prison life and that their mere presence is not a constitutional violation—even if they have medical implications. *See, e.g.*, *Swain*, 961 F.3d at 1287 (inability to maintain social distancing in correctional facilities); *Keohane*, 952 F.3d at 1275 (prison dress and grooming standards); *Chandler v. Crosby*, 379 F.3d 1278, 1297 (11th Cir. 2004) (stuffy and hot prison cells). Guarding prisoners is one such condition that every prison will have to implement no matter the medical implications.

### 2. *Discussion*

Plaintiff alleges that Defendants have deliberately chosen to prioritize security over prisoner health by requiring that all medical transports be accompanied by a correctional officer. Plaintiff alleges that this policy of keeping guards with prisoners resulted in a deadly delay—she asserts that the length of the delay is not at issue, only that the policy will sometimes result in a delay, which will sometimes result in medical problems.

But the same can be said of every prison policy. The policy of *keeping inmates in prisons* will sometimes result in a delay of medical care. And, of course, every delay in medical care can possibly result in medical complications or death. Even a policy requiring a parolee to check in with a parole officer may sometimes result in conflicting correctional and medical demands. It is hard to conceive of any

23

penological measure that would not, in some way, impede the punished individual's access to medical care.

The mere policy of requiring a correctional officer to accompany a medical transport is not deliberate indifference to any medical needs that might require rapid transport.  It is simply a fact of incarceration.[13]  Plaintiff therefore fails to state an Eighth Amendment claim.  Further, Defendants did not violate any clearly established constitutional rights and are therefore entitled to qualified immunity.

## V.  CONCLUSION

Accordingly, it is ORDERED that Defendants' motion to dismiss (Doc. # 16) is GRANTED and Plaintiff's claims are DISMISSED.

An appropriate final judgment will be entered separately.

DONE this 6th day of January, 2022.

                        /s/ W. Keith Watkins
                    UNITED STATES DISTRICT JUDGE

---

[13] Plaintiff's claim also assumes that a change to the corrections policy would have resolved the lack of transportation.  However, other factors, such as existing contracts with, policies of, or personal security choices of medical professionals, ambulance operators, or helicopter personnel may have required a correctional officer to be present for transportation even without the policy.

24